# United States Court of Appeals
## For the First Circuit

No. 10-2063

JOY GONCALVES,

Plaintiff, Appellant,

v.

PLYMOUTH COUNTY SHERIFF'S DEPARTMENT,

Defendant, Appellee,

PLYMOUTH COUNTY,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Mitchell J. Notis, with whom Law Office of Mitchell J. Notis,
was on brief for appellant.
William P. Breen, Jr., with whom Charlotte L. Bednar and
Eckert Seamans Cherin & Mellott, LLC, were on brief for appellee.

October 7, 2011

**TORRUELLA**, **Circuit Judge**.    Plaintiff-Appellant Joy Goncalves ("Goncalves") appeals the district court's award of summary judgment to her employer, the Plymouth County Sheriff's Department ("PCSD"), on her allegations of employment discrimination based on her gender, race, and national origin in violation of Massachusetts General Laws Chapter 151B ("Chapter 151B") and Title VII 42 U.S.C. § 2000e, and her age in violation of Chapter 151B and the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 623.    We conclude that the district court properly granted summary judgment as to Goncalves's claims and affirm the district court's decision.  Goncalves v. Plymouth Cnty., No. 08-11648-GAO, 2010 WL 3191448 (D. Mass. Aug. 11, 2010).

## I. Background

Goncalves, a forty-nine-year-old Cape Verdean female who also self-identifies as black, began working for PCSD as a Budget Administrator in February 2001.  Goncalves's role as Budget Administrator mainly required her to process invoices on a daily basis.  Her position also required her to "balance reports, run checks, [and] maintain office supplies;" it did not require her to perform specific duties with respect to computers or their maintenance.

Between 2004 and 2008, Goncalves applied for -- and was denied -- promotion to four different positions in the PCSD. Goncalves alleged that her denials were due to unlawful

-2-

discrimination.  Only two of these positions are at issue in this dispute, as the first two challenged decisions are time-barred.

Goncalves applied for the contested IT positions of Systems Analyst/Programmer and Database Administrator (the "IT Positions") in February 2008.  Among the qualifications required for the IT Positions were that the applicant hold an associate's degree in a computer-related field and have three years of relevant work experience.  Additionally, as the district court found, the IT Positions "required three or more years as an intranet/internet/user interface developer with experience developing database-driven intranet/internet applications using IIS, MTX, COM, ASP, SQL Server (version 7.0 or higher), Access, Visual Basic, Visual InterDev, and JavaScript." Goncalves, 2010 WL 3191448, at *2.

PCSD interviewed nine applicants for the IT Positions, including Goncalves.  Interviewers were Human Resources Director Paul Lawton ("Lawton"), Human Resources Manager Mark Gabriel ("Gabriel"), and Deputy Director of IT Tara Cruza ("Cruza").  Interviewees included -- among others not relevant for purposes of this appeal -- Britney Johnson ("Johnson"), a white female, and Matthew Blais ("Blais"), a white male, both of whom were younger than Goncalves and each of whom obtained one of the IT Positions.  These three interviewees' qualifications varied as follows.

-3-

Although Johnson lacked an associate's degree, she had the requisite computer experience and work background that PCSD sought, specifically, "very, very strong" Macintosh computer skills and web designing abilities that would allow her to "step right in and assume" departmental duties. Indeed, Gabriel expressly noted during his deposition that Johnson -- who had previously designed a number of web pages, worked as a graphic designer, and used Macintosh design programs -- possessed experience and skills that "none of the other candidates had" and for which the IT department was in "desperate need." Blais both satisfied the degree requirement and had relevant work and IT experience, having worked in the development department of a private company in which he received extensive hands-on IT experience. Goncalves possessed the requisite degree, but in contrast to Johnson or Blais, lacked both the IT programming skills and relevant work experience that PCSD was soliciting. Specifically, Goncalves testified that her current job duties did not require her to utilize computer skills; that she had last worked in a computer-related field eleven years earlier on an outdated DOS-based system; and that her only experience with building web sites consisted of starting, but never finishing, a site.

Two critical stages in the hiring process were an interview with the panel and a practical exam that was designed to evaluate the candidates' IT knowledge. In the interview phase,

Lawton, Cruza, and Gabriel graded each applicant's responses to questions concerning their work experience, IT background, and interest in a technical position on a scale of "A" through "C-." Johnson received an "A" from Cruza and an "A-" from Gabriel; Blais, a "B+" from Cruza and at least a "B" from Lawton;[1] Goncalves, a "C" from Cruza and a "B-" from Lawton.[2] During the interview, Cruza noted that Goncalves appeared angry when it became apparent that she no longer would be able to work her current 6:00 a.m. to 2:00 p.m. schedule (due to her work as a youth sports coach) because the IT Positions would require her to be present at work from 8:00 a.m. to 4:00 p.m. to provide necessary support to other staff. Johnson and Blais had no such scheduling demands or restrictions.

Following the interview process, PCSD selected Goncalves, Johnson, and Blais (along with two additional candidates) to take the practical exam. Blais received the highest score (18 points out of a possible 24); Johnson, one of the top three scores (15 points out of 24); and Goncalves, one of the lowest scores (10 points out of 24). Goncalves testified that she was "stressed out," "upset," and unable to focus during the exam. Goncalves did

---

[1] At her deposition, Cruza, on reviewing Lawton's interview sheet, testified that it was not clear whether Lawton rated Blais an "A-," a "B+," or a "B."

[2] Based on the record, Gabriel does not appear to have given a letter grade to either Goncalves or Blais. Lawton's interview report for Johnson is not in the record.

not complete the exam in the time allotted, left several important sections unanswered, did not try to subsequently supplement her answers, and neither requested additional time in which to complete the exam nor complained as to its overall length. On reviewing the candidates' qualifications and overall performance, PCSD decided to hire Johnson for the Systems Analyst/Programmer position and Blais for the Database Administrator position.

On September 26, 2008, Goncalves filed a complaint in district court alleging that PCSD unlawfully discriminated against her when it denied her a promotion. PCSD denied Goncalves's allegations of discrimination in its Answer and subsequently filed a Motion for Summary Judgment, asserting that the hired candidates were better qualified for the IT Positions and that Goncalves's gender, race, age, and/or national origin played no part in its hiring decisions. The district court granted PCSD's motion and held that Goncalves had not met her evidentiary burden because she had not shown two of the four required factors to a prima facie claim of discrimination, i.e., Goncalves had not shown she was (1) qualified for the IT Positions and (2) similarly situated to the hired candidates. Goncalves, 2010 WL 3191448, at *2-*3. Although not required to -- as no prima facie case had been shown -- the district court also found that PCSD had provided a nondiscriminatory justification for its ultimate employment

decision and Goncalves had not shown that PCSD's proffered reason was pretextual.  Id. at *3.  Goncalves appealed.

## II.  Discussion

## A.  Standard of Review

Summary judgment is properly granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review the district court's grant of summary judgment de novo, "drawing all reasonable inferences in favor of the non-moving party while ignoring 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) (quoting Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009)).

We evaluate an employment discrimination claim for which there is no direct evidence of discrimination by applying the three-stage framework[3] of the McDonnell Douglas burden-shifting analysis.  Thompson v. Coca-Cola Co., 522 F.3d 168, 176 (1st Cir. 2008); Rossy v. Roche Prods., Inc., 880 F.2d 621, 625 (1st Cir. 1989); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  First, the plaintiff must show a prima facie case of employment discrimination.  McDonnell Douglas, 411 U.S. at 802.

---

[3]  This analysis applies to Title VII claims and to claims brought pursuant to Mass. Gen. Laws ch. 151B.  See Quiñones v. Buick, 436 F.3d 284, 289 n.1 (1st Cir. 2006).  Goncalves makes no claim on appeal that a different standard is applicable to ADEA claims.

If the plaintiff succeeds, "[t]he burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision." Quiñones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006). If the defendant provides such a reason, "the McDonnell Douglas framework -- with its presumptions and burdens -- is no longer relevant." Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)) (internal quotation marks omitted). Instead, the ball returns to the plaintiff's court, in which she must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination. Quiñones, 436 F.3d at 289.

## B. Prima Facie Case of Discrimination

This case begins and ends with the first stage of the McDonnell Douglas framework. To establish a prima facie case, Goncalves bears the burden of showing that (1) she is a member of a protected class, (2) she was qualified for the open position for which she applied, (3) she was rejected for that position, and (4) someone holding similar qualifications received the position instead. Ingram v. Brink's, Inc., 414 F.3d 222, 230 (1st Cir. 2005). The district court found, and the parties do not contest, that Goncalves satisfies the first and third requirements of a

-8-

prima facie discrimination case; the true query is whether she can meet the second and fourth elements. We conclude that she cannot.

### 1. Qualified Individual

The record shows that Goncalves was not qualified for the IT Positions. The IT Positions required extensive computer knowledge and experience that Goncalves, aside from possessing the requisite degree, admitted to lacking. According to the record, at the time of her IT Position applications, the PCSD IT Department was in "desperate" and "critical" need of employees with strong Macintosh-based computer skills and web design experience that could be applied to, among other tasks, PCSD's website development project and to the Correctional Facility's inmate print shop design program. During her deposition, Goncalves admitted that at the time she applied she did not have the programming qualifications required for at least the System Analyst position; that her then-position as Budget Administrator did not require her to work with, maintain, or repair computers; that she last held a computer-related job approximately eleven years ago; that when she previously worked in a computer-related field, it was with an outdated, DOS-based system that was markedly different from PCSD's then in-place computer system; and that she had never fully created a web site.

Further, the record also reflects that, of those who took a practical exam designed to evaluate applicants' qualifications

for the IT Positions, Goncalves received one of the lowest scores, whereas Johnson and Blais received among the highest.  This weighs against Goncalves's assertion that she was qualified for the IT Positions.  See Martínez-Burgos v. Guayama Corp., No. 10-1372, 2011 WL 3769063, at *4 (1st Cir. Aug. 26, 2011) (fact that applicant failed to obtain the minimum score for a "fitting candidate" during the interview process "defeats her contention that she was qualified for the position").

Indeed, Goncalves's only arguments in favor of her contention that she was qualified for the IT Positions are as follows.  First, because Goncalves advanced to the interview and exam stages of the hiring process, PCSD effectively conceded that she was qualified for the IT Positions.  The PCSD made no such admission.  That the PCSD in an abundance of caution let her application advance does not make Goncalves qualified.  It admittedly is confusing why PCSD permitted Goncalves to proceed through the selection process if she clearly lacked the programming skills and relevant work experience the IT Department specifically sought.  Nevertheless, "[o]ur role is not to second-guess the business decisions of an employer."  Rossy, 880 F.2d at 625.  The record shows that Goncalves received the lowest interview and exam scores and that she lacked the "critical" technical skills and work background the IT Positions required.  Such undisputed facts

evidencing a lack in qualifications make plain she has not made a showing of a prima facie case of discrimination.

Second, Goncalves asserts that the job requirements themselves could not have been binding as Johnson, who did not satisfy the associate's degree requirement, still obtained an IT Position. This argument overlooks the fact that PCSD considered Johnson's lack of a degree, weighed it against her possessing critically-needed skills that "none of the other candidates had," and determined that, overall, Johnson had precisely what the IT department sought in qualifications for the Systems Analyst/Programmer position, namely, strong Macintosh-based skills and web design computer experience. See Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 255 (1st Cir. 1986) (to establish employment discrimination, plaintiff must show more than "that the employer made an unwise business decision, or an unnecessary personnel move. . . . [or] acted arbitrarily or with ill will"). Goncalves's arguments do not make a genuine-issue-of-material-fact mountain out of an otherwise-factually-supported molehill.

For the foregoing reasons, Goncalves fails to establish that she was qualified for the IT Positions.

### 2. Similarly Situated

Goncalves not only fails to show that she was qualified for the IT Positions, but she also points to no evidence establishing that she was similarly situated to the hired

-11-

candidates. Similarly situated candidates must share "roughly equivalent qualifications to perform substantially the same work." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). They must be similar in "material respects," Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996), i.e., "apples should be compared to apples." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989). Peeling back the record, the core of the evidence shows that Goncalves was not similarly situated to Johnson and Blais, whether in work experience, computer programming abilities, interview performance, or test results.

Goncalves did not have the same work experience or IT background as Blais or Johnson. Indeed, she had little to no programming experience, had never fully designed a web site, and her most relevant work experience (from eleven years prior) was with an outmoded DOS-based system. Further, during the interview stage, Goncalves received notably lower marks than either Blais or Johnson, obtaining a "C" and "B-," in comparison to Blais's "B" and "B+" and Johnson's "A-" and "A." Lastly, Goncalves was one of the lowest scorers on the practical exam, whereas Johnson and Blais received among the highest scores. See Masters v. City of East Point, 313 F. App'x 239, 240-41 (11th Cir. 2009) (affirming district court's finding that applicant could not show he was

qualified or similarly situated to other candidates for a promotion because of his low test score).

Goncalves asserts -- as she did in support of her "qualified individual" claim -- that because she advanced through the selection process, PCSD all but admitted she was similarly situated to the subsequently hired individuals, and that because Johnson had credentials that Goncalves lacked and vice versa, the two must have been similarly situated. Such arguments are not sufficient for purposes of establishing a genuine issue of material fact. Goncalves has not adverted to any IT programming, web design skills, or work experience on her part that comparably matched Blais or Johnson's background, nor has she compellingly contested her consistently lower performance throughout the hiring process. Where the record shows that an employee was in fact differently situated from other candidates, we cannot rely on "overly attenuated inferences, unsupported conclusions, and rank speculation" to quiet the tolling of the summary judgment bell. Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 856 (1st Cir. 2008) (quoting Thompson, 522 F.3d at 175) (internal quotation mark omitted).

It is not our role to "sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991). Employee

"[q]ualifications are notoriously hard to judge," and "more must be shown than that the employer made an unwise personnel decision." Rathbun v. Autozone, Inc., 361 F.3d 62, 74 (1st Cir. 2004). Because Goncalves has failed to show that she was either qualified or similarly situated to the candidates selected for the IT Positions -- whether in work experience, computer programming skills, or overall interview and test performance -- she cannot meet her burden of showing a prima facie case of discrimination. We therefore conclude that the district court acted appropriately in granting summary judgment to PCSD. We likewise end our discrimination inquiry, as Goncalves has failed to "make it past the first stage [of the McDonnell Douglas framework], i.e. to aver a prima facie case," and thus, "the inference of discrimination [for PCSD to rebut] simply never arises." Ingram, 414 F.3d at 230; see also Martínez-Burgos, 2011 WL 3769063, at *4.

### III.  Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment.

**Affirmed**.  **Costs are taxed against appellant**.